IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 16-1240-DD |
| ) | Chapter 11 |
| Jesse Demetrios Moskos ) | |
| ) | **DISCLOSURE STATEMENT** |
| Debtor. ) | |

TABLE OF CONTENTS

I. INTRODUCTION
II. HISTORY OF EVENTS PRIOR TO AND SINCE FILING THE CHAPTER 11 PETITION
III. FINANCIAL DATA
IV. PLAN OF REORGANIZATION
V. ALTERNATIVES TO REORGANIZATION AND RISKS TO CREDITORS
VI. UNSECURED CREDITORS' COMMITTEE
VII. LEGAL BINDING EFFECT; DISCHARGE OF CLAIMS AND INTEREST

## I. INTRODUCTION

Jesse Demetrios Moskos ("Debtor" or "Moskos") is the Debtor in this case. The Debtor provides this Disclosure Statement pursuant to 11 U.S.C. §1125. Its purpose is to provide adequate information to holders of claims or interests entitled to vote on the Plan of Reorganization ("Plan") proposed by the Debtor in order fo the creditors to make an informed decision about the merits of approving the Plan.

A copy of the Plan is being forwarded with the Disclosure Statement and should be read in conjunction therewith. Terms referenced in the Disclosure Statement have the same meaning as used in the Plan. The Plan has been filed with the Court.

The Debtor is requesting that the United States Bankruptcy Court ("Court") approve the Disclosure Statement. The approval of the Disclosure Statement by the Court does no constitute approval by the Court on the merits of the Plan.

Unless otherwise specifically stated, the Disclosure Statement and Plan have been prepared from information supplied by the Debtor. For any additional information concerning the contents of this Disclosure Statement, please contact the Debtor's counsel, R. Michael Drose, Esquire, and Ann U. Bell, Esquire, 3955 Faber Place Drive, Charleston, South Carolina, 29405. Mr. Drose's and Mrs. Bell's number is (843) 767-8888 and their email addresses are michaeldrose@droselaw.com and ann@droselaw.com.

## II. HISTORY OF EVENTS PRIOR TO AND SINCE FILING THE CHAPTER 11 PETITION

### A. History

Debtor has six (6) properties. Several years ago, the principal creditor, Tidelands Bank, now United Community Bank ("UCB"), determined that it would no longer fund Moskos' building plans on the properties he owned.

Negotiations were unsuccessful and these properties went into foreclosure. Debtor has vigorously defended these actions and filed a Chapter 13 case prior to any of the properties being sold.

Negotiations in the Chapter 13 case that was filed did not result in UCB agreeing to an extended payout that Debtor believed he needed. Thus, Debtor converted to Chapter 11.

### B. Events Since Filing

Since filing bankruptcy, Debtor has completed work on two (2) of the properties under mortgage to UCB and these properties are producing $2,200.00 monthly.

Debtor has filed all documents required of him and his employment has continued.

### C. Future

The Debtor is has filed a five year projection attached as "Exhibit A".

## III. FINANCIAL DATA

### A. General

Debtor is current with all of his filing requirements regarding income and expenses. The information has been furnished solely from the records of the Debtor. This information is available for review in the records on file with the Court. The Debtor is not delinquent with post petition debts. The accounting method for the Debtor is a cash basis accounting.

### B. Executory Contracts

There are no executory contracts in existence in this case.

### C. Assets

The following is a list of the assets of the Debtor. The assets, subject to liens, where indicated, are as follows:

1. Debtor's DNC Bank Account has a balance as of October 31, 2016, of $43,080.00.

2. The debtor has vehicles and household items totaling $12,050.00.

In addition to Debtor's personal property, set forth above, he owns the following real properties subject to the mortgages set forth herein. Debtor has used values provided Post-Petition Appraisal secured UCB as reflected in their Proofs of Claim, and has not independently appraised said properties. Debtor has used the relevant proof of claim in setting out the amount owed on each of these debts:

1. Lot 3, Yellow House Place-value $85,000. Amount owed $86,730.91.

2. 1864 Grover Place Road-value $42,500. Amount owed $41,131.18.

3. 1851 & 1839 Woodland Road-value $345,000. Amount owed $264,499.06.

4. Lot C, Tract 16, Woodland Road-value $50,000. Amount owed $49,820.68.

5. 46 Wedge Park Road-value $150,000. Amount owed Wells Fargo, now NationStar (first mortgage) $147,000.00, pursuant to a Loan Modification. Amount owed UCB (second mortgage) $21,731.23.

### D. Priority Creditors

There are no priority creditors in this case.

### E. Unsecured Liabilities

There are five (5) unsecured creditors holding liabilities totaling $18,340.00.

### F. Anticipated Litigation and Avoidance Actions

The Debtor does not anticipate any future litigation other than the potential need to object to the UCB Proofs of Claim in the event they overstate the amounts owed as determined in the State Court litigation between the parties. UCB has added substantial attorney fees since the State Court Foreclosure Decrees. Debtor is investigating whether to object to these fees and other charges reflected in the Proofs of Claim.

## IV. PLAN OF REORGANIZATION

### A. In General

The funding of Debtor's Plan will come from his earnings and rentals received from 1851 and 1839 Woodland Road which total $2,200 monthly. Debtor's annual salary for 2015 was $132,203.

Beginning January 1, 2017, Debtor will pay UCB the monthly amount of $3,270.40, with this creditor receiving interest at the annual rate of 4%, depending on the amount actually owed to the Creditor, these payments can extend to 180 months.

Further, Debtor has negotiated a payment amount with NationStar which will have him paying that creditor $994.11 a month. The principal balance is being lowered from $183,969.00 to $147,000.00.

Debtor will pay unsecured creditors in full on or before January 1, 2020.

### B. Voting

The Plan can be confirmed by the Court if it is accepted by the holders of two-thirds (2/3) in amount and more than one-half (½) of the number of claims in each impaired class.

### C. Impairment of Claims and Interests

11 U.S.C. §1124 provides the definition of the term "impairment." A claim is impaired under a Plan unless the claim is left unaltered by its treatment under the Plan with the exception of secured debts which are in default. In that situation, if the default is cured under the terms of the Plan and the maturity date is reinstated, the claim is not deemed to be impaired. Claims which are not impaired are not entitled to vote. All Classes, except Classes I are impaired.

### D. Cram-down

In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if it awards fair and equitable treatment of the Class or Classes rejecting the Plan. This is commonly known as the "cram-down" provision and is allowed under 11 U.S.C. §1129(b).

### E. Modification of the Plan

The Debtor may amend or modify the Plan at any time prior to the entry of an Order Confirming the Plan without approval of the Court. Subsequent to the entry of the Order Confirming the Plan, the Debtor may modify the Plan before substantial confirmation of the Plan with the approval of the Court.

### V. ALTERNATIVE TO REORGANIZATION AND RISKS TO CREDITORS

The priority and unsecured Creditors would not receive any payment in the event that this case was converted to a Chapter 7. It appears that a Chapter 7 Trustee would attempt to liquidate all properties. There are no properties which would produce monies for unsecured creditors if that were to take place.

### VI. UNSECURED CREDITORS' COMMITTEE

The Unsecured Creditors' Committee has not been formed in this case.

### VII. LEGAL BINDING EFFECT; DISCHARGE OF CLAIMS AND INTEREST AND RETENTION OF JURISDICTION

A. Confirmation of the Plan discharges the Debtor from all pre-confirmation debts except as provided in the Plan, the Order Confirming the Plan or §1141(d) of the Bankruptcy Code. Confirmation vests all property of the estate in the Debtor and binds the Debtor, its Creditors and other parties regardless of whether they have accepted the Plan.

B. Subsequent to the Confirmation of the Plan, the Court will retain jurisdiction to hear and determine any objection to claims against the Debtor and any motion and/or adversary proceeding which the Debtor may commence, including an action to determine the validity, priority, and extent of the liens against the Debtor's assets by any secured Creditor.

DROSE LAW FIRM

By: /s/ R. Michael Drose
R. Michael Drose
Attorneys for the Debtor
District Court ID No. 609
3955 Faber Place Drive, Suite 103
Charleston, SC 29405
Phone: (843) 767-8888
Facsimile: (843) 767-3290
drose@droselaw.com

Charleston, South Carolina
This 13th day of December, 2016.